DRAKE, J.
lain this appeal, we examine whether a gas station convenience store breached any legal duty owed to a patron, who, upon exiting the store, tripped and stumbled over a protruding edge of a merchandise pallet displaying bottled water.

FACTUAL AND PROCEDURAL HISTORY

Factual Background

The facts of this case are not in dispute. On November 28, 2011, the plaintif^appel- *140 lee, Henry Moore, Jr., drove his vehicle to a gas station and convenience store in Hammond, Louisiana, owned by the defendant/appellant, Murphy Oil USA, Inc. (Murphy Oil). Moore parked his vehicle by the gas pumps and entered the store. After making his purchases, he walked to the door to exit. As he was reaching for the door to open it, Moore turned back and spoke to the manager of the store. The exit door was a single glass door that opened outward, from right to left. Upon exiting the store, Moore’s right foot made contact with a black pallet containing a large merchandise display of bottled water located outside of the door. Moore’s contact with the pallet caused him to trip and stumble, though he did not fall. The display consisted of a two-step bench made of hard plastic. The bottom tier held two-gallon water jugs with red labels. The top tier held twenty-count cases of half-liter water bottles with blue labels that were stacked two cases high. The display stand measured roughly three feet long;' each tier was approximately one foot high. When it was stacked with the water, the display was roughly even with- the door handle used to enter and exit the store. On the night of the incident, some of the gallon jugs on the bottom tier were missing, exposing the black, plastic corner of the display. The corner of the pallet protruded several inches over a yellow line which ran perpendicular to the doorframe outward toward the parking area.
IsMoore reported the incident to the manager then on duty at Murphy Oil. Following the incident, Moore suffered back pain, for which he received treatment. Murphy Oil paid for Moore’s medical treatment for a period of approximately four months. Moore filed the instant suit when the defendants discontinued payment for his medical treatment.

Action in the Trial Court

On October 18, 2012, Moore filed suit against Murphy Oil and Liberty Mutual Fire Insurance Company (Liberty Mutual), Murphy Oil’s insurer, alleging that the water display pallet created an unreasonably dangerous condition.[1] The defendants filed a motion for summary judgment on August 9, 2013, seeking dismissal of all Moore’s claims against them. The trial court denied the defendants’ motion for summary judgment on November 18, 2013.' The defendants applied for supervisory writs to the First Circuit Court of Appeal following the denial of their motion for summary judgment, seeking to reverse the trial court’s ruling. This court denied the defendants’ writ. Moore v. Murphy Oil USA, Inc., 2013-2051 (La.App. 1 Cir. 2/27/14) (unpublished), writ denied, 2014-0598 (La.4/25/14), 138 So.3d 1232.
The matter proceeded to a bench trial on liability and damages on June 25, 2014. Prior to trial, Moore stipulated that his damages did not exceed $50,000.00, exclusive of legal interest and court costs. Moore also moved to the strike the jury in this matter, which the trial court granted on March 31, 2014. Following the presentation of Moore’s case at trial, the defendants moved for a directed verdict on liability, which the trial court denied.[2]
[4At the conclusion of trial, the trial court took the matter under advisement. On August 27, 2014, the trial court issued reasons for judgment, finding that the water display pallet encroached on the walk *141 way outside of the Murphy Oil store, creating an unreasonably dangerous condition, but that any recovery by Moore was to be reduced by his percentage of fault, which the trial court found - to be twenty-five (25%) ■ percent. The trial court' granted judgment in favor of Moore, in the amount of $37,500.00. A written judgment to this effect was signed on October 1,2014.

Action on Appeal

On September 25, 2014, Murphy Oil and Liberty Mutual filed a motion for suspensive appeal from the district court’s August 27, 2014 reasons for judgment. By order dated October. 1, 2014, the district court granted the appeal, setting a return date of “45 days after costs are paid.” Murphy Oil and Liberty' Mutual then lodged an appeal with this Court.[3]
By order dated February 12, 2015, this court éx proprio motu issued a show cause order on the basis that the October 1, 2014 written judgment at issue appears to lack sufficient decretal language in that it fails to identify against whom the judgment was issued. On July 17, 2015, this court entered an interim order and remanded the case to the trial court for the limited purpose of revising the October 1, 2014 judgment to include proper decretal language, specifying against which defendant or defendants said judgment was rendered. This court entered an order maintaining the appeal, but referred a final determination as to the whether the | ^appeal was to be maintained to the merits panel by order dated September 14,2015.
The -defendants also filed a motion to supplement the record on appeal on February 20, 2015. On July 17, 2015, this court referred that motion to the merits panel. ■ «'

PENDING MOTIONS

Decretal Language of Final Judgment

As discussed above, this court ex proprio motu issued a show cause order on the basis that the October 1, 2014 written judgment at issue appears ■ to lack sufficient decretal language in that it fails to identify against whom’- the judgment was issued. The parties were ordered to file briefs on or before February 27, 2015. The 'defendants timely filed their brief in support :of maintaining the appeal on February 27,-2015. Moore filed his brief in support1 ■ of ■ maintaining the' appeal on March 3,2015, fóur days late.
The October 1, 2014 judgment that is the subject of the instant'appeal states, in pertinent part:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor the plaintiff, Henry Moore, Jr., in the amount of $37,500.00, with interest from date of judicial demand.
There are two named defendants in this case — Murphy Oil and Liberty Mutual.. The issue before us.is whether the judgment, which fails to identify against whom said judgment was issued, contains sufficient decretal language
 A final judgment must contain decretal language, Conley v. Plantation Mgmt. Co., L.L.C., 2012-1510 (La.App. 1 Cir. 5/6/13), 117 So.3d 542, 546-47, writ denied, 2013-1300 (La.9/20/13), 123 So.3d *142 178. Generally, it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. Conley, 117 So.3d at 547. The ^specific relief granted should be determinable from the judgment without reference to an extrinsic source such as pleadings or reasons for judgment. Conley, 117 So.3d at 547. The failure to name the defendant or defendants against whom the judgment is rendered in a ease with multiple defendants makes the judgment fatally defective because one cannot discern from its face against whom it may be enforced. Conley, 117 So.3d at 547. To be legally enforceable as a valid judgment, a third person should be able to. determine from the judgment the party cast-and the amount owed without reference to other documents in the record. Conley, 117 So.3d at 547.
On July 17, 2015, this court entered an interim order and remanded the case to the trial court for the limited purpose of revising the October 1, 2014 judgment, to include proper decretal language, specifying against which defendant or defendants said judgment was rendered.[4] This court also ordered the trial court to supplement the appellate record with the amended judgment on, or before August 17, 2015. The amended judgment,' signéd July 27, 2015,' states, in pertinent part:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor the plaintiff, HENRY MOORE, JR'.,- and against the defendants, MURPHY OIL USA, INC., AND LIBERTY MUTUAL FIRE INSURANCE COMPANY, who are liable jointly and in solido, for the full sum and amount of THIRTY SEVEN THOUSAND FIVE HUNDRED AND XX/100 DOLLARS ($37,500.00), together -with legal interest thereon from date of'judicial demand until paid and for all costs of these proceedings. Costs are assessed against the defendants. This judgment is final and dispositive of all issues before the trial court and is designated a final and appealable judgment.
fyThe record -on appeal has now been supplemented with- the amended judgment.[5] Based on the foregoing, we find that the amended, judgment contains sufficient decretal language and is a final judgment appropriate for immediate appeal. See La. C.C.P. arts.1911, 1918, and 2083. The appeal is maintained.

Motion to Supplement the Record on Appeal

The defendants filed an unopposed motion to supplement the record on appeal on February 20, 2015. The defendants seek to include a certified copy of the transcript of the October 28, 2013 hearing before the trial court on the defendants’ motion for summary judgment. As will be discussed more fully below, the defendants are appealing the denial of their motion for summary judgment (an interlocutory ruling) in conjunction with their appeal of this matter. On July 17, 2015, this court re *143 ferred the motion to supplement to the merits panel.
The appellants are charged with the responsibility of completeness of the record for appellate review, and the inadequacy of the record is imputable to them. Niemann v. Crosby Dev. Co., 2011-1337 (La.App. 1 Cir. 5/3/12), 92 So.3d 1039, 1044. As an appellate court, we have no jurisdiction to review evidence that is not in the record on appeal, and we cannot receive new evidence. Niemann, 92 So.3d at 1044. An appellate court must render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcripts, jury instructions (if applicable), judgments, and other rulings, unless otherwise designated. See La. C.C.P. art. 2127 and 2128; Official Revision Comment (d) for La. C.C.P. art. 2127; Niemann, 92 So.3d at 1044. Requests for supplementation of the record are more properly directed to the trial court, rather than the court on appeal. See Dillon v. Freeman, 2009-0606 (La. App. 1 Cir. 1/5/10), 30 So.3d 989, 990, writ denied, 2010-0264 (La.4/9/10), 31 So,3d 389. However, La. C.C.P. art. 2132 authorizes the correction of a record -on appeal that is incorrect or contains misstatements, irregularities or informalities, or which omits a material part of the trial record. Unifund CCR Partners v. Perkins, 2012-1851 (La.App. 1 Cir. 9/25/13), 134 So.3d 626, 629.
The only transcript contained in the record on appeal is the transcript of the bench trial held on June 25, 2014. We note that a deputy clerk of court requested an extension of the return date from the trial court as the “[t]ranscripts [had] not been delivered.” The trial court extended the return date by thirty days. It is not clear which transcripts-the deputy clerk of court was referring to-in the extension request, .nor if said transcripts' were ever delivered and made part of the record.
The transcript of the hearing On the motion for summary judgment is a material part of the trial record and should be made part of the record on appeal, as the appellants are appealing the ruling on that motion in conjunction with their appeal of this case. In considering the merits of the appeal, we hereby' grant the defendants’ unopposed motion to supplement the record on appeal with the transcript of the hearing oh the motion' for summary judgment. See Abshire v. State, ex rel. Dept. of Ins., 2006-0005 (La.App. 1 Cir. 11/3/06), 2006 WL 3110244, at *7 (unpublished).

LAW AND DISCUSSION

Defendants’ Motion for Summary Judgment

As noted, as part of their first two assignments of error on appeal, the defendants’ request this court' to review the motion for summary judgment that was denied by the trial court on November 19, 2013. Generally, an appeal may not be taken from the trial court’s denial of a motion for summary judgment. See La. |3C.C.P. art. 968. However, it may be reviewed on ah appeal of a final judgment in the 'suit. Gilchrist Const. Co., L.L.C. v. State, Dept., of Transp. and Development, 2013-2101 (La.App, 1 Cir. 3/9/15), 166 So,3d 1045, 1051, writ denied, 2015-0877 (La.6/30/15), 172 So.3d 1097. When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. Judson v. Davis, 2004-1699 (La.App. 1 Cir. 6/29/05), 916. So.2d 1106, 1112-13, writ denied, 2005-1998 (La.2/10/06), 924 So.2d 167 (cit *144 ing Landry v. Leonard J. Chabert Medical Center, 2002-1559 (La.App. 1 Cir. 5/14/03), 858 So.2d 454, 461 n. 4, writ denied, 2003-1748 (La.10/17/03), 855 So.2d 761). Therefore, on appeal, we will consider the defendants’ argument that the trial court erroneously denied their motion for summary judgment,
A motion for summary judgment is properly granted, if the,pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as. a matter of law. La. C.C.P. art. 966(B)(2).
The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to, produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2).
hnAn appellate court’s review of a summary judgment is de novo review based on the evidence presented to the trial court, using the same criteria used by the court in deciding whether a summary judgment should be granted. Kessler Federal Credit Union v. Rivero, 2014-0095 (La.App. 1 Cir. 9/19/14), 153 So.3d 1218, 1221. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is “material” for . summary judgment purposes can be seen only in light of the substantive law applicable to the case. Shipp v. Landry, 2013-1673 (La.App. 1 Cir. 5/2/14), 147 So.3d 721, 725.
The applicable substantive law in this case is set forth in La. R.S. 9:2800.6, which governs merchant liability for slip, or trip, and fall cases. The relevant duty and burden of proof in a negligence[6] case against a merchant is as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all oth *145 er elements of his cause of action, all of the following:
(1)The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
1^(2) The merchant either created • or had actual or constructive notice of the condition which caused the damage, pri- or to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an. employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but hot limited to shops, restaurants, and lobby areas, of or within the hotel, motel, or inn.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669,. 2317, 2322, or 2695.
Failure to prove any of the requirements enumerated in La. R.S. 9:2800.6 is fatal to the plaintiffs case. See White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, 1084. Thus, merchants are required to exercise reasonable care to protect those who enter the premises, and this duty extends to keeping the premises safe from unreasonable risks of harm and warning persons of known dangers.
The defendants filed their motion for summary judgment, a memorandum in support thereof, a list of essential legal elements, and a list of facts not genuinely disputed. In- support of their motion for summary judgment, the defendants submitted:
lia(l) portions of the transcript of the deposition of Moore taken June 25, 2013;
(2) Moore’s responses to Murphy Oil’s first set of requests for production of documents;
(3) the affidavit of Bensley Brooks, the store manager at the time of the incident; and ■
(4) the defendants’ answers to Moore’s . . interrogatories and requests for production of documents. •
.The defendants argued that summary judgment was proper because Moore could not meet his burden of proving two essential elements of his merchant liability claim at trial, namely, that the water display pallet was the cause-in-fact-of his incident, and alternatively, that the pallet presented an unreasonable risk of harm and that the risk was reasonably foreseeable. The defendants alleged that Moore’s testimony reveals that he failed to watch where he was going and thus, the display did not cause his fall. The defendants further contend that the water display pallet was indisputable large in size, as shown in the photographs. Accordingly, the defendants argued that the display was “open and obvious”, and created no risk of harm, as *146 they claim was admitted by Moore and, as is apparent, in their view, from the photographs. ■ ■ .
Moore opposed the defendants’ motion for summary judgment. In support of his opposition, Moore submitted:
'(1) his affidavit dated September ’4, 2013, with five picture attachments;
(2) a copy of a -safety event report of Murphy Oil dated January 9, 2013; and
(3) a Field Investigator Liability Investigation Report dated February 8, 2012.
Moore argued that there was a genuine issue of material fact concerning whether the hazardous condition posed by the water display pallet was the cause of the accident. Specifically; Moore argued that the issue of whether the use of a [ ^merchandise display, where the merchant allows the comer edge of the pallet to become exposed near a store’s exit that is partially obscured by merchandise and advertising information, creates an obvious and dangerous hazard to any patron should be determined only after a full trial on the merits, in accordance with the Louisiana Supreme Court’s, decision in Brous-sard v. State exrel. Office of State Bldgs., 2012-1238 (La.4/5/13), 113 So.3d 175. However, we note that following the trial court’s denial of the motion for summary judgment and this court’s denial of the writ application, the supreme court clarified that a trial court may grant summary judgment on whether a condition presents an unreasonable risk of harm, including whether the condition is open and obvious.[7] *147 Thus, the trial court could | uconsider whether a material fact existed regarding the unreasonable risk of harm presented by the merchandise display and whether the matter was appropriate for summary judgment.
The defendants filed a reply to Moore’s opposition, arguing that Broussard was inapplicable to the instant case.
A hazardous condition is one that creates an unreasonable risk of harm to customers under the circumstances. Pena v. Delchamps, Inc., 2006-0364 (La. App. 1 Cir. 3/28/07), 960 So.2d 988, 991, unit denied, 2007-0875 (La.6/22/07), 959 So.2d 498. Merchants are not insurers of their patrons’ safety, and a customer is under a duty to use ordinary care to avoid injury. Cusimano v. Wal-Mart Stores, Inc., 2004-0248 (La.App. 1 Cir. 2/11/05), 906 So.2d 484, 488. A merchant is not absolutely liable every time an accident happens. Leonard v. Wal-Mart Stores, Inc., 97-2154 (La.App. 1 Cir. 11/6/98), 721 So.2d 1059, 1061.
In determining whether a condition is unreasonably dangerous, courts have adopted a four-part risk-utility balancing test. This test requires consideration of:
(1)the utility of the eomplained-of condition;
(2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition;
(3) the cost of preventing the harm; and
(4) the nature of the plaintiffs activities in terms of its social utility or whether it is dangerous by nature.
Hutchinson v. Knights of Columbus, Council No. 5747, 2003-1533 (La.2/20/04), 866 So.2d 228, 235. Simply put, the’ trier of fact' must decide whether' the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362, 365.
The second prong of the risk-utility balancing test focuses on whether the defective condition is obvious and apparent, or as it has come to be commonly known, “open and obvious.”’ Generally, a defendant does not have a duty to protect against ah open and obvious hazard. Broussard, 113 So.3d at 184; Pitre v. Louisiana Tech Univ., 95-1466 (La.5/10/96), 673 So.2d 585, 591. In order for a defect to be considered open and obvious, the danger created by that defect must be apparent to all corners, ie., everyone who may potentially encounter it. Broussard, 113 So.3d at 184, 192; Caserta v. Wal-Mart Stores, Inc., 2012-0853 (La.6/22/12), 90 So.3d 1042, 1043 (per curiam).
Thus, the trial court had to decide if there was a genuine issue of material fact *148 as to whether the eomplained-of condition, here the water display pallet, created "an unreasonable risk of harm. Summary judgment is proper when no legal duty is owed because the condition encountered is obvious and apparent to all and not- unreasonably dangerous. See Bufhin, 171 So.3d 851, 859 n. 3.
hfiln support of its motion, the defendants submitted, excerpts from Moore’s deposition. In, pertinent part, Moore stated he had been to the gas station before. When asked if he had seen the display stand before the night of the incident, he replied, “[IJf you’re entering into the store, you have to see it.” Moore stated he did hot recall it being as close to the exit door. He never ran into it before, and he never really paid attention to it. Moore stated he is certain he saw it on his way into the store on the night of the incident. He remembered he had to go around the stand and avoid it to get through the door. As he was exiting the store, he looked back to speak to someone. When questioned, Moore acknowledged that he never turned back around and faced his eyes forward before he ran into the water bottle display. When he turned back around, he was “already up on the thing ... already stumbling.” Moore stated that caught him by surprise.
In further support of the motion, the defendants offered the affidavit of Bensley Brooks, the store manager at the time of the incident. Brooks attested that the water display was located in a high traffic area. When exiting the store, the door opens outward from right to left and the display stood to the right of the door. In the four years he worked at the store, there were no other incidents involving the display stand. Murphy Oil also submitted Moore’s responses to its requests for production, and Murphy Oil’s partial answers to ■ plaintiffs interrogatories and requests for production of documents.
In opposition to Murphy Oil’s motion for summary judgment, Moore asserted that the display, which was located directly one step outside of the exit door, constituted a hazardous and defective condition. He argued summary judgment was inappropriate because there is a genuine issue of material fact as to whether the merchandise display was the cause of his accident.
In support of his opposition, Moore submitted his own affidavit. He attested that when he exited the store, his view through the door and adjacent window was 117partially obscured by advertising signs and merchandise that had been stacked against the exterior windows. These objects blocked the view of the water display that was right outside the door. Moore further attested that on the evening of his incident, some merchandise had been sold or removed from the bottom edge of the display, leaving the dark-colored corner of the display shelf exposed. According to Moore, the shelf was low to the ground and was not easily observable. He tripped over the edge and stumbled across the parking lot toward the gas pumps.
In further opposition to the motion for summary judgment, Moore submitted copies of five photographs he took the day after the accident. He also submitted Murphy Oil’s “Safety Event Report” dated February 8, 2012. This report states it was prepared in anticipation of litigation. It noted Moore’s injury as “cuts/abrasions.” The report includes photographs of the accident scene, but they were obviously taken months after the accident and the merchandise display had clearly been moved over, farther away from the door when compared with photos taken by Moore shortly after the accident.
*149 Following a hearing on the defendants’ motion, the trial court denied , the motion for summary judgment, stating in part:
... I can not [sic] say looking at the facts of this case, that the apparent, if you will, location of the display which is in essence the basis of the defective condition is so open and obvious that anyone who stumbled on it would have to be determined to be 100 percent at fault.
So, consequently, I think that there are material issues of fact that can only be decided after a full, if you will, trial is presented and all evidence is before the fact finder.
In the instant case, Moore has the burden of proof to demonstrate liability. Through their motion for summary judgment and supporting evidence, the defendants pointed out the absence of factual support for one or more elements essential to Moore’s claim. Therefore, the burden of proof shifted under La. [18C.C.P. art. 966(C)(2) to Moore to come forward with affirmative evidence sufficient to demonstrate a likelihood that he would be able to meet his burden of proof at trial. Moore raised several questions of fact concerning the existence and condition of the purported hazard. First, the water display pallet may have been placed unreasonably close to the exit door. Also, although the water display itself was large and obvious, it is not clear that the protruding corner of the display pallet, which caused Moore to trip and stumble, was open and obvious. Without merchandise placed upon it, the protruding black corner of the water display pallet may have led to an unreasonably dangerous condition that was not readily apparent to all. Further, the fact that the exit was partially obscured from the inside of the store by merchandise and advertising information placed in front of the window may have contributed to the unreasonably dangerous condition. It is not clear, as a matter of law, that the water display pallet and its location did not create an unreasonably dangerous condition under the circumstances; As such, the trial court determined that material facts existed and that the defendants were not entitled to summary judgment. Based on our de novo review,; we find that-the trial court .properly denied sunimary judgment. Defendants’-assignments of error-pertaining to the' denial of their motion 'for summary judgment are without merit.

Liability at Trial

In the third, fourth, and fifth assignments of error,-the defendants contend the trial court erred in finding that Moore satisfied all the elements of a negligence claim, pursuant to La. R.S. 9:2800;6, based on'thé' evidence introduced at trial. As discussed in detail above, La. R.S. 9:2800.6 sets forth the burden of proof’applicable to the claims at issue. To prove his fall was caused by Murphy Oil’s breach of this duty, Moore had the burdén to prove the water display pallet presented an unreasonable risk of harm, that Murphy Oil either created or had |inactual or constructive notice of the water display, and that Murphy Oil failed to exercise reasonable care.
On appeal,' the defendants urge that the trial court erred in finding that the pallet presented an unreasonably dangerous condition and that the defendants had a duty to warn against such a condition. The defendants argue that the pallet was “open and obvious” and did not create an unreasonable risk of harm, and that Moore could have avoided any harm through the exercise of ordinary care. The defendants contend that the trial court failed to apply the risk-utility factors in determining whether the condition was “open and obvious” and erred when it held that Moore satisfied all the elements' of a merchant liability claim pursuant to La, R.S. 9:2800.6.
The question of whether or not a condition presents an unreasonable risk *150 of harm is subject to review under the manifest error standard. Thus, we must uphold the trial court’s" determination if we are convinced, from a review of the entirety. of the record, that it has a reasonable factual basis. Pena, 960 So.2d at 991. Where there are two permissible views of the evidence, the factfinder’s choice — in this instance, the trial judge—cannot be manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Tramp. & Dev., 617 So.2d 880, 888 (La.1993).
Moore’s version of the accident has been discussed in detail above in our de novo review of the, defendants’ motion for summary judgment, so we will not reproduce that discussion here. In its written reasons, the trial court specifically found that “the pallet of water encroaching into the walkway exiting the Murphy Oil store created an unreasonably dangerous condition.” In its discussion of the risk-utility factors, the trial court found that the water display pallet was not “open and obvious.” Specifically, the trial court stated:
The outer comer of the pallet protruded several inches over a yellow line which ran perpendicular to the door outward to the parking area. A person entering the store |2ncould reasonably assume the yellow line marked the outer boundary of the doorway entrance and the protruding corner of the pallet should have been visible to any reasonably prudent person entering the store. Exiting the store presents a totally different view of the stored water and protruding corner. A display poster placed in the window coupled with various inside the store product displays to the right of the.exit door prevents one from seeing the stored water until after the door is opened. The right hand swinging door forced Mr. Moore to exit near the pallet of stored water. The, front protruding comer of the pallet could riot be seen because the stored water on the rear of the pallet blocked the view.
After careful consideration of all the factors!,] this court is of the opinion the pallet of water encroaching into the walkway exiting the Murphy Oil store created an unreasonably dangerous condition. The condition was created by the Murphy Oil employees with the knowledge of Murphy Oil and had existed as long as the manager could remember. Plaintiff has satisfied all the requirements of La. R.S. 9:2800.6, [Emphasis added.]
Upon a thorough review of the record, we agree and find that the record sufficiently supports the trial court’s factual findings. Therefore, the factual findings are not manifestly erroneous. See Stobart, 617 So.2d at 882. These assignments of error are without merit.

Comparative Fault

In the sixth assignment of error, the defendants allege the trial court erred in allocating only 26% of the fault in causing the accident to Moore.
Like all factual findings, the standard of review of comparative fault allocations is that of manifest error. See Watson v. State Farm, Fire & Cas. Ins. Co., 469 So.2d 967, 968 (La.1985). The court in Watson listed a number of factors to be considered in determining the portion of fault attributable to the parties, including (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (6) any extenuating circumstances which might 121 require the actor to proceed in haste, without proper thought. Watson, 469 So.2d at 974.
In its written reasons, the trial stated: The fact that plaintiff should have seen the hazard upon entering the store does *151 not defeat his claim, but reduces it according to his percentage of fault. Considering the plaintiff had to rely on his memory that the corner protruded into the walkway since the comer was not readily visible upon exiting; the distraction encountered by greeting/saying good bye to the manager as he was exiting; and his general lack of prior familiarity with the store, this court finds plaintiff to be twenty-five percent at fault.
Considering the Watson factors in light of the particular facts of this case as outlined above, we cannot say that the trial court, committed manifest error in making its allocation of fault. Accordingly, there is no merit to this assignment of error.

Off-Sets

Finally, the defendants contend the trial court erred in failing to apply an offset to the stipulated damage amount for “med-pay” amounts paid to Moore by the defendants. Liberty Mutual alleges that it paid $4,803.97 in no-fault “med-pay” towards Moore’s post-incident medicals prior to trial. At the time this suit was initiated, Moore alleged that the total damages in the'case exceeded $50,000.00. Before the case proceeded to trial, Moore stipulated “to restrict his damage claim to less than $50,000.00, exclusive of legal interest and court costs.” This figure does not exceed the jurisdictional- amount required for trial by jury. See La. C.C.P. art. 1732.
Louisiana Civil Code article 2005 provides that “[p]arties may stipulate the damages to be recovered in case of nonperformance, defective performance, or delay in performance of an obligation.” A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. Stipulations |2abetween the parties in a specific case are binding on the trial court when not in derogatioh of law. Stevens v. Winn-Dixie of Louisiana, 95-0435 (La.App. 1 Cir. 11/9/95), 664 So.2d 1207, 1212.
After a review of the record, we find that Moore stipulated that his damages would hot exceed $50,000.00. However, there is no indication in the stipulation that the value of Moore’s claim referred to the value of his damages after a deduction of $4,803.97, or that it was stipulated that a credit of $4,803.97 would be given agairist the damages awarded. ' The judgment herein states only that Moore is awarded $37,500.00. The judgment does not delineate what amount is awarded for special damages as compared to general damages. Thus, unlike the cases cited by the defendants in their brief, there is no evidence in the record that the trial court’s refusal to credit $4,803.97 resulted in damages being awarded in excess of the stipulated $50,000.00. Furthermore, the cases cited by the defendants are distinguishable, as they deal with medical payment coverage provisions' in automobile insurance policies.[8]

DECREE

For the foregoing reasons, we affirm the July 27, 2015 amended judgment of the trial court in favor of the plaintiff, Henry Moore, Jr., and against the defendants, Murphy Oil USA, Inc. and Liberty Mutual Fire Insurance Company. Costs of this appeal are assessed to. the defendants.
AFFIRMED.
WELCH, J., dissents.
It! respectfully dissent. The photographs included in the record speak vol- *152 uines. The water display was open and obvious to everyone who may have potentially encountered it; thus, it did not violate a tort duty under Louisiana law. See Bufkin v. Felipe’s Louisiana, LLC, 2014-0288 (La.10/15/14), 171 So.3d 851, 856. Also, the corner of the display was not protruding into the entrance and exit to the store such as would, create an unreasonable risk of harm to a person using ordinary care and prudence. The plaintiff admitted in his testimony that any person entering the store would have seen the display. Moreover, the plaintiff testified that he was not looking where, he was going as he exited the store. The water display as depicted in the photographs is not unreasonably dangerous and the cause in fact of the accident was the plaintiffs failure to watch where he was going. .The plaintiff failed to meet his burden of proof under La. R.S. 9:2800(B).
Thus, I respectfully dissent.

. The defendants removed the case to federal court. Following a motion by Moore, the United States District Court for the Eastern District of Louisiana remanded the case to state court. Moore v. Murphy Oil-USA, Inc., No. CIV.A. 12-2688, 2012 WL 6569785 (E.D.La. Dec. 17, 2012).

. See La. C.C.P. art. 1810.

. Reasons for judgment cannot serve as a final judgment from which an appeal can be taken. This court has strictly construed La. C.C.P. art.1911 (which states that "every final judgment shall contain the typewritten or printed name of the judge and be signed by the judge") and has dismissed appeals perfected prior to.the signing of a judgment. La. C.C.P. art.1918; Overmier v. Traylor, 458 So.2d 499, 501 (La.App. 1st Cir. 1984). In this case, . however; the trial court judge signed the order of appeal the same day he signed the final judgment. Thus, the appeal was not prematurely taken by the appellants.

. See Jenkins v. Recovery Technology Investors, 2002-1788 (La.App. 1 Cir. 6/27/03), 858 So.2d 598.

. The bench trial of this matter was heard by the Honorable Wayne Ray Chutz of the 21st JDC, Division A, on June 25, 2014, Judge Chutz was automatically elected to the First Circuit Court of Appeal on August 22,- 2014, at the close of qualifying, -after running for the position unopposed. The amended judgment, signed July 27, 2015, indicates that this case was "re-allotted” to Division B of the 21st JDC and was signed by the Honorable Bruce C. Bennett. Presumably, the matter was re-allotted because the Honorable Jeffrey S. Johnson, who served as plaintiff's counsel to Moore at the trial in June of 2014, was elected to Division A ,of the 21st JDC on December 6,2014.

. Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of La. C.C. art. 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant’s conduct failed to conform to the appropriate standard of care; (3) the defendant’s- substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant’s substandard conduct was a legal cause of the plaintiff’s injuries; and (5) the plaintiff was damaged. Brewer v. J.B. Hunt Transport, Inc,, 2009-1408 (La.3/16/10), 35 So.3d 230, 240. Whether a duty is owed is a question of law; whether a defendant has breached a duty owed is a question of fact. Brewer, 35 So.3d at 240.

. The supreme court clarified its decision in Broussard following a line of jurisprudence, especially in the First Circuit Court of Appeal, which held that a determination of whether a condition presents an tmreasonable risk of harm, including whether the condition is open and obvious, is not appropriate for summary judgment. In Bufkin v. Felipe’s Louisiana, L.L.C., 2014-0288 (La.10/15/14), 171 So.3d 851, 859 n. 3, the supreme court stated:
Additionally, in Rodriguez v. Dolgencorp, L.L.C., 2014-1725 (La. 11/14/14), 152 So.3d 871 (per curiam), the supreme court granted summary judgment in favor of a defendant based on the determination in that case that shopping carts in a parking iot were an “open and obvious” condition such that the plaintiff could have avoided if she had exercised ordinary care.
Finally, in Allen v. Lockwood, 2014-1724 (La.2/13/15), 156 So.3d 650 (per curiam), the supreme court granted a writ “to provide much needed guidance to both the practitioners and the Judiciary of this State on the proper interpretation and application” of the court's decisión Broussard. The supreme court stated:
We first note the Court of Appeal misinterpreted our holding in Broussard by concluding "[t]he supreme court has held that the question of- whether a defect presents an unreasonable risk of harm is a mixed question of law and fact and, accordingly, should be determined by the fact-finder,” which would preclude summary judgment on these issues. In Broussard, .which involved a full jury trial, not a motion for summary judgment, we held the determination of whether ⅛ defect constituted an unreasonable risk of'harm was a question for the trier of fact:
We note that our opinion in Broussard ... should not be construed as precluding summary judgment when no legal duty is owed because the condition encountered is obvious arid apparent to all and not unreasonably dangerous.:
In order to avoid further overlap between the jury’s role as fact-finder and the judge’s role as lawgiver, we find the analytic framework for evaluating an unreasonable risk of harm is properly classified as a determination of whether a defendant breached a duty owed, rather than a determination of whether a duty is owed ab initio, It is axiomatic that the issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty owed is a question of fact, E.g., Brewer v. J.B. Hunt Transp., Inc., 09-1408, p. 14 (La.3/16/10), 35 So.3d 230, 240 (citing Mundy v. Dep’t of Health and Human Res., 620 So.2d 811, 813 (La.4'993)); The judge decides the *147 former, and the fact-finder — judge or jury — decides the latter.
Broussard, 12-1238 at pp. 11-12, 113 So.3d at 185.
Notably, Broussard was a three-day jury trial involving a fact-intensive- determination as to whether the defect posed an unreasonable risk of harm or constituted an open and obvious defect. The jury returned a verdict in favor of Broussard. The , First Circuit Court of Appeal reversed on grounds of manifest error because it found the defect was open and obvious. This Court reversed finding no manifest error in the jury’s determination. We resolved the issue under the risk-utility balancing test. Our comments under this discussion clearly pertained to cases that were tried either by judge or jury. Broussard did not involve summary judgment practice nor did our discussion infer that issues of this nature must be determined by a trial. Any reading of Broussard interpreting it as a limit on summary judgment practice involving issues of unreasonable risk of harm is a misinterpretation of the Broussard case.
Allen, 156 So.3d at 652-53. (Emphasis added.)

. See Robling.v, Allstate Ins. Co., 97-0582 (La.App. 1 Cir. 4/8/98), 711 So.2d 780, 786 and Triche v. Allstate Ins. Co., 96-0575 (La. App. 1 Cir. 12/20/96), 686 So.2d 127, distinguished by Pallet v. Louisiana Farm Bureau Cas. Ins. Co., 99-208 (La.App. 5 Cir. 7/27/99), 751 So.2d 925, writ denied, 99-2877 (La.12/10/99), 751 So.2d 857.